UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

STEVEN D. WILLIAMS,      )
         )
    Plaintiff,      )
         )
    v.      )     CAUSE NO. 1:11-CV-00390
         )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,      )
         )
    Defendant.      )

## OPINION AND ORDER

Plaintiff Steven Williams appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner"), denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.)  For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Williams applied for DIB and SSI in May 2008, alleging disability as of July 30, 2006. (Tr. 146-54.)  The Commissioner denied his application initially and upon reconsideration. (Tr. 95-109.)  A hearing was held on March 2, 2010, before Administrative Law Judge ("ALJ") Daniel Mages, at which Williams (who was represented by counsel), his wife, and a vocational expert ("VE") testified. (Tr. 38-90.)  On April 27, 2010, the ALJ rendered an unfavorable decision to Williams, concluding that he was not disabled because he could perform a significant

---

[1] All parties have consented to the Magistrate Judge. (Docket # 14); *see* 28 U.S.C. § 636(c).

number of unskilled, light work jobs in the economy. (Tr. 17-25.)  The Appeals Council denied

his request for review, at which point the ALJ's decision became the final decision of the

Commissioner. (Tr. 1-9, 239-42.)

Williams filed a complaint with this Court on November 14, 2011, seeking relief from the

Commissioner's final decision. (Docket # 1.)  In this appeal, Williams alleges that the ALJ erred

by: (1) failing to properly account for his moderate deficiencies in maintaining concentration,

persistence, or pace in his residual functional capacity ("RFC") and in the hypothetical posed to

the VE; (2) discounting the opinion of Dr. Phillip Johnson, his treating family practitioner; and

(3) partially discrediting his symptom testimony. (Opening Br. of Pl. in Social Security Appeal

Pursuant to L.R. 7.3 ("Opening Br.") 9-14.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Williams was thirty-six years old; had either a ninth or

tenth grade education; and had past relevant work as a carpenter, truck washer, and detailer. (Tr.

44, 148, 235, 256.)  He alleges that he became disabled due to residual effects of a right wrist

fracture, degenerative disk disease, gastritis, esophagitis, anal polyps, obesity, borderline

intellectual functioning, bipolar disorder, depression, and attention deficit hyperactivity disorder

("ADHD"). (Opening Br. 2.)

### B.  Williams's Testimony at the Hearing

At the hearing, Williams, who was 5 feet 10 inches tall and weighed 222 pounds, testified

that he lived with his wife (who does not work outside the home) and four children in a two-

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 477-page administrative record
necessary to the decision.

story home. (Tr. 43-44, 72.)  He stated that he got fired from his job in July 2006 when he argued

with his boss about his lifting limitations; he unsuccessfully attempted a painting job in 2008.

(Tr. 45-46, 64, 67.)  He is independent with his self care, although he experiences some arm pain

when dressing; occasionally helps with grocery shopping, sweeping, and dusting; and has no

difficulty driving short distances. (Tr. 44, 48-49.)  He could do the laundry and dishes, but

chooses not to. (Tr. 49-50.)  In a typical day, Williams testified that he watches television, plays

video games, and prepares simple meals; he has difficulty sleeping at night due to his back pain,

esophageal reflux, and rectal itching. (Tr. 48, 50, 53, 55-56, 68.)

       Williams takes Vicadin and muscle relaxers for his low back pain, which cause him some

fatigue; his doctor also recommended that he take Methadone, but Williams is fearful of possible

addiction issues and thus has not done so. (Tr. 50-52.)  In addition, he had an epidural injection

and saw a chiropractor, but neither was very helpful. (Tr. 50-52.)  He shifts positions every five

to ten minutes between sitting and lying down due to his pain and has difficulty walking long

distances. (Tr. 52, 62; *see also* Tr. 78-79.)  Williams also complained of knee pain, for which he

just started taking medication, and wrist "arthritis" pain from a fracture eight years earlier. (Tr.

53-54.)  He elaborated that his wrist hurts and his hands shake when lifting items and after

playing video games for an extended period. (Tr. 54.)  He was scheduled for a sleep study, but

missed his appointment. (Tr. 54-55.)

       As to his mental status, Williams stated that he has difficulty remembering things and

being around people due to his depression and bipolar disorder; he takes some medications

prescribed by his family doctor for these problems. (Tr. 59-61, 64, 67; *see also* Tr. 73-77.)  He

admitted that he smokes two packs of cigarettes a day and smokes marijuana twice a day; he also

3

drinks between four and six beers a day during the week and twelve beers a day on the weekend.[3] (Tr. 61-62.)

### C. Summary of the Relevant Medical Evidence

On May 31, 2007, Williams was evaluated by Jennifer Fray, Psy.D., to determine his level of individual and family functioning after allegations of child neglect and abuse. (Tr. 361-63.)  An intake assessment noted that he had some excessive worry and that his thinking was circumstantial. (Tr. 361.)  He denied any current use of illicit substances but admitted he had difficulty controlling his use of alcohol. (Tr. 361.)  An MMPI-2 reflected that he may have difficulty controlling his anger and that he was suspicious and distrustful of others, blaming them for his problems rather than accepting responsibility. (Tr. 362.)  The test results also suggested that he had poor impulse control and decision-making ability. (Tr. 362.)  He had an excessively high opinion of himself, thought that he had a "special mission" in life, and did not feel understood by others. (Tr. 362.)  He endorsed having racing thoughts and some possible hallucinations; the most prominent problem was that his thinking involved paranoid and persecutory thoughts. (Tr. 362.)  He also had a tendency toward aggressiveness and impulsivity. (Tr. 362.)  A Child Abuse Potential Inventory indicated that he shared characteristics associated with active physical child abuse. (Tr. 362.)

On June 16, 2008, Williams was evaluated by Candace Martin, Psy.D., at the request of Social Security. (Tr. 251-55.)  On mental status exam, Williams's mood and affect was characteristic of extreme performance anxiety and discouragement. (Tr. 253.)  Dr. Martin found that his performance on the mental status exam suggested below average intellectual functioning

---

[3] Williams's wife also testified at the hearing, essentially corroborating his testimony. (Tr. 72-79.)

4

as indicated by his abstract reasoning skills, verbal concept formation, judgment, and insight. (Tr. 254.)  He did demonstrate an adequate fund of general information and memory and math skills, and his social skills were intact. (Tr. 253-54.)

Dr. Martin found that Williams was a rather weak informant, providing limited insight into his psychological diagnoses. (Tr. 254.)  She noted that he was only recently tested for and diagnosed with bipolar disorder and ADHD. (Tr. 254.)  He did recognize, however, that he had poor control of his anger. (Tr. 254.)  She concluded that Williams's activities of daily living and ability to function independently appeared to be limited only by his physical limitations related to his back pain. (Tr. 254.)  Although he complained that he could not advance in jobs because of his bad temper, his temper did not appear to interfere with his daily living skills. (Tr. 254.)

Dr. Martin concluded that Williams's ability to engage in gainful employment was limited primarily due to his physical problems, although he would also have difficulty on the job due to his poor anger management and thus would need a work environment requiring little social interaction. (Tr. 254-55.)  She found that he did show some moderate cognitive weakness that would negatively impact his ability to obtain a higher level of employment not involving physical activity; she thought that he was likely to give up easily in the face of these difficulties. (Tr. 254-55.)  Williams was not interested in pursuing recommended mental health services. (Tr. 255.)  Dr. Martin diagnosed him with ADHD and bipolar I disorder by report and assigned him a Global Assessment of Functioning ("GAF") score of 45.[4] (Tr. 255.)

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000).  A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

On June 21, 2008, Williams was evaluated by Dr. Kinzi Stephenson. (Tr. 256-59.)  On exam, Williams had a normal steady gait, and a straight leg test was negative. (Tr. 258.)  He was able to walk on his heels and toes and squat to the ground; motor strength was 3/5 in the right upper extremity and 4/5 in the left upper extremity and both lower extremities. (Tr. 258.)  Dr. Stephenson noted that Williams was very cooperative, but "questioned his effort at times." (Tr. 259.)  Dr. Stephenson concluded that Williams had a mild limitation in lifting and carrying due to limited motion in his wrist, but that he could still carry twenty pounds more than two-thirds of the day; he had no limitation in his ability to sit, walk, see, hear, or speak. (Tr. 259.)

On July 2, 2008, Dr. J. Sands, a state agency physician, reviewed Williams's record and found that his physical impairment was non-severe, observing that he had no significant neurological deficits or loss of motion. (Tr. 261.)  Dr. Sands's opinion was later affirmed by Drs. M. Brill and Manjit Sihota. (Tr. 281-82.)

On July 25, 2008, Stacia Hill, Ph.D., a state agency psychologist, reviewed Williams's record and found that he had organic mental disorders and affective disorders. (Tr. 262-79.)  She concluded that he had a moderate limitation in maintaining social functioning and concentration, persistence, or pace, and a mild limitation in activities of daily living. (Tr. 272.)  She also completed a mental RFC assessment in which she articulated that Williams was "moderately limited" in his ability to interact appropriately with the general public and understand, remember, and carry out detailed instructions, but "not significantly limited" in the remaining seventeen mental activity categories. (Tr. 276-77.)  She thought that Williams would be unable to complete complex tasks but that he could "complete repetitive tasks on a sustained basis without special considerations, preferably in an environment with limited social interactions."

6

(Tr. 278.)  Dr. Hill's opinion was later affirmed by J. Gange, Ph.D., another state agency psychologist. (Tr. 280.)

On November 17, 2009, Dr. Phillip Johnson, Williams's family practitioner, completed a medical source statement, indicating that Williams had low back syndrome with a fair prognosis. (Tr. 421-24.)  He thought that Williams's psychological factors, which included bipolar disorder and ADHD, contributed to the severity of his symptoms and limitations. (Tr. 421.)  He estimated that Williams could sit for thirty minutes at a time and needed work that alternated between sitting and standing. (Tr. 422.)  He wrote that Williams could work only ten hours per week and that he would need to take a ten-minute break every thirty minutes due to his pain. (Tr. 422.)  He further estimated that Williams could lift less than ten pounds frequently, ten pounds occasionally, and twenty pounds rarely, and never lift fifty pounds. (Tr. 423.)  Finally, he opined that Williams would miss more than three days of work per month due to his impairments. (Tr. 424.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## IV.  ANALYSIS

### A.  The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5)

8

whether the claimant is incapable of performing work in the national economy.[5] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On April 27, 2010, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 17-25.) He found at step one of the five-step analysis that Williams had not engaged in substantial gainful activity after his alleged onset date. (Tr. 19.) At step two, he concluded that Williams had the following severe impairments: the residual effects of a right wrist fracture, degenerative disk disease, gastritis, esophagitis, anal polyps, obesity, borderline intellectual functioning, a bipolar disorder, depression, ADHD, and marijuana and alcohol abuse. (Tr. 19.) At step three, the ALJ determined that Williams's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 19.)

Before proceeding to step four, the ALJ determined that Williams's symptom testimony was not credible to the extent it portrayed limitations in excess of the following RFC:

> [T]he claimant has the residual functional capacity to perform a range of light work defined as follows: sitting six hours during an eight-hour workday, and standing and walking six hours during an eight-hour workday, with the ability to

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

sit or stand at his discretion while remaining at the workstation (but maintaining sitting or standing for at least fifteen minutes at a time); lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; simple and repetitive work with the ability to attend and concentrate for two hours at a time; and no more than superficial interaction with the general public, coworkers or supervisors.

(Tr. 21.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Williams was unable to perform any of his past relevant work. (Tr. 24.)  The ALJ then found at step five that Williams could perform a significant number of other unskilled, light jobs within the economy, including production inspector, packager, and assembler. (Tr. 25.)  Accordingly, his claims for DIB and SSI were denied. (Tr. 25.)

### C.  The ALJ Adequately Accommodated Williams's Moderate Deficits in Concentration, Persistence, or Pace in the RFC and the Hypothetical Posed to the VE

First, Williams argues that the ALJ erred when assigning his RFC and posing a hypothetical to the VE at step five, contending that the ALJ failed to account for his moderate deficiencies in maintaining concentration, persistence, or pace.  Williams's argument, however, does not withstand scrutiny.

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing his degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4.  Relevant to this appeal, the "paragraph B" criteria consist of four "broad functional areas":  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3),

416.920a(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). "[T]he limitations identified in the 'paragraph B' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ." *Id.*; *see Virden v. Astrue*, No. 11-0189-DRH-CJP, 2011 WL 5877233, at *9 (S.D. Ind. Nov. 4, 2011). "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). That is, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012).

Here, when assessing the "paragraph B" criteria at steps two and three, the ALJ concluded that Williams had "moderate" difficulties in maintaining concentration, persistence, or pace and social functioning, and mild deficits in activities of daily living. (Tr. 20.) Then, before reaching step four, the ALJ assigned Williams an RFC for a limited range of light work that required, from a psychological standpoint, "simple and repetitive work with the ability to attend and concentrate for two hours at a time; and no more than superficial interaction with the general public, coworkers or supervisors." (Tr. 21.)

11

Contrary to Williams's assertion, the ALJ adequately accounted for his deficiencies in maintaining concentration, persistence, or pace by assigning him this limitation in the RFC, which the ALJ then incorporated into the hypothetical posed to the VE. (*See* Tr. 81-82.)  This is because the RFC is amply supported by the opinion of Dr. Hill (and affirmed by Dr. Gange), to which the ALJ assigned "great weight." (Tr. 23.)  To review, Dr. Hill considered Williams's record and concluded that he had moderate difficulties in maintaining concentration, persistence, or pace and social functioning and mild limitations in activities of daily living; she also found that Williams was "moderately limited" in his ability to interact appropriately with the general public and understand, remember, and carry out detailed instructions, but that he was "not significantly limited" in the remaining seventeen mental-activity categories. (Tr. 276-77.) Accordingly, Dr. Hill articulated that although Williams was unable to complete complex tasks, he could still "complete repetitive tasks on a sustained basis without special considerations, preferably in an environment with limited social interactions." (Tr. 278.)

The instant circumstances are analogous to the facts confronting the Seventh Circuit Court of Appeals in *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).  There, the ALJ determined that the claimant was moderately limited in his ability to maintain a regular schedule and attendance and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. *Id.*  In posing a hypothetical to the VE, the ALJ relied upon the opinion of a consulting physician who stated that because the claimant was not significantly limited in seventeen of twenty work-related areas of mental functioning, he retained the mental RFC to perform "low-stress, repetitive work." *Id.*  The Court of Appeals concluded that the ALJ's limitation to low-stress, repetitive work adequately incorporated

12

Johansen's moderate mental limitations, articulating that the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work." *Id.*; *see also Milliken v. Astrue,* 397 F. App'x 218, 221-22 (7th Cir. 2010) (unpublished) (affirming ALJ's step five finding where a medical expert opined that despite claimant's difficulties in social functioning and concentration, persistence, or pace, she could still perform unskilled work).

Here, like the consulting physician in *Johansen*, Dr. Hill essentially "translated [her] findings into a specific RFC assessment."[6] 314 F.3d at 288. That is, Dr. Hill concluded that despite Williams's moderate difficulties in maintaining concentration, persistence, or pace and social functioning and mild restrictions in activities of daily living, he could still perform repetitive tasks on a sustained basis without special considerations. The ALJ then adopted this limitation when he limited Williams to "simple and repetitive work."

To reiterate, an ALJ "is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 567816, at *4 (W.D. Wis. Mar. 2, 2005); *see Johansen*, 314 F.3d at 289 ("All that is required is that the hypothetical question [to the VE] be supported by the medical evidence in the record." (quoting *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987))). Because Dr. Hill translated Williams's moderate difficulties in maintaining concentration, persistence, or pace into an RFC

---

[6] Williams, however, contends that the instant facts are more analogous to those presented in *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 617-18 (7th Cir. 2010). But there, the ALJ failed to incorporate all of the mental limitations assigned in the RFC into the hypothetical posed to the VE at step five. *Id.* Here, the hypothetical posed by the ALJ to the VE at step five adequately reflects all of the limitations assigned in the RFC. (*Compare* Tr. 81-82, *with* Tr. 21.)

for "simple and repetitive work," substantial evidence supports the ALJ's step-five finding.  As a result, Williams's first argument on appeal—that his RFC and the hypothetical posed to the ALJ at step five did not account for his moderate difficulties in concentration, persistence, or pace—does not warrant a remand of the Commissioner's final decision.

   D.   *The ALJ's Consideration of Dr. Johnson's Opinion Is Supported by Substantial Evidence*

         Williams next argues that the ALJ improperly evaluated the opinion of Dr. Johnson, his treating family practitioner.  Contrary to Williams's assertion, substantial evidence supports the ALJ's consideration of Dr. Johnson's opinion.

         The Seventh Circuit has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see Johansen*, 314 F.3d at 287; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(c), 417.927(c); *see Books*, 91 F.3d at 979.

14

Furthermore, "[a] claimant is not entitled to [disability benefits] simply because his treating physician states that he is 'unable to work' or 'disabled,'" *Clifford*, 227 F.3d at 870; the determination of disability is reserved to the Commissioner. *Id.*; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); SSR 96-5p.  In fact, "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p; *see also* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Frobes v. Barnhart*, No. 06 C 1305, 2006 WL 3718010, at *8 (N.D. Ill. Nov. 20, 2006).  "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether the individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p; *see Frobes*, 2006 WL 3718010, at *8.

Here, the ALJ thoroughly considered Dr. Johnson's medical records, including his November 2009 medical source statement indicating that Williams would need a sit-to-stand option, a ten-minute break every thirty minutes, could work only ten hours per week, and would miss more than three days of work a month. (Tr. 22-23.)  In fact, the ALJ penned two paragraphs discussing Dr. Johnson's treatment records and the limitations set forth in the medical source statement. (*See* Tr. 22-23.)  Nonetheless, the ALJ ultimately assigned "great weight" to the less restrictive limits assigned by Drs. Hill and Gange, explaining that they were "well supported by the medical evidence of record" (Tr. 23), and also relied upon the opinion of consulting examiners, Drs. Stevenson and Martin (Tr. 22-23). *See generally Dixon*, 270 F.3d at 1177 (acknowledging that a consulting physician's opinion may offer "the advantages of both impartiality and expertise"); *Smith v. Apfel*, 231 F.3d 433, 442-43 (7th Cir. 2000) (emphasizing

that a consulting physician may bring expertise and knowledge of similar cases).

More specifically, in discounting Dr. Johnson's more severe limitations, the ALJ reasoned:

> In November 2009, Dr. Johnson stated the claimant cannot work full-time, needs to be able to shift at will, and needs to take unscheduled breaks due to his pain and bipolar disorder. However, this opinion is without substantial support from the other evidence of record, which renders it less persuasive. Dr. Johnson's opinion appears to rest at least in part on an assessment of a mental impairment outside his area of expertise. In addition, the doctor's report indicates the claimant has had a good response to pain medication, although he experiences drowsiness at the maximum dose. In addition, certain aspects of Dr. Johnson's opinion are in fact consistent with the residual functional capacity determined in this decision. The claimant's need to shift at will is accommodated by a sit/stand option.

(Tr. 23 (internal citation omitted).) Clearly, the ALJ thoroughly analyzed Dr. Johnson's opinion and incorporated his recommended restriction that Williams be able to transition from sitting to standing at will; thus, Williams is in essence solely challenging the ALJ's decision not to incorporate *all* of Dr. Johnson's severe limitations into the RFC.

In that regard, "a medical source statement must not be equated with the administrative finding known as the RFC assessment." SSR 96-5p. As stated *supra*, the determination of a claimant's RFC is an issue reserved to the Commissioner, 20 C.F.R. §§ 404.1527(d), 416.927(d), and "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance," SSR 96-5p. *See generally Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability."). Thus, the ALJ is under no obligation to afford Dr. Johnson's restrictions a significant amount of weight when rendering his RFC determination.

In any event, as explained earlier, a treating physician's opinion is only entitled to controlling weight if it is both well supported by medically acceptable clinical and laboratory diagnostic techniques *and* not inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Here, the ALJ correctly observed that Dr. Johnson's more severe restrictions were "without substantial support from the other evidence of record" and therefore were not entitled to controlling weight. (Tr. 23.)  Indeed, the limitations penned in Dr. Johnson's medical source statement are at odds with the mild physical limitations noted by Drs. Stevenson, Sands, and Brill, and, from a psychological standpoint, the ability to perform repetitive tasks opined by Drs. Hill and Gange. *See Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004) (explaining that a treating physician's opinion is not entitled to controlling weight where it is inconsistent with other medical source opinions of record).

As to the weight the ALJ then assigned to Dr. Johnson's opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see, e.g.*, *Smith*, 231 F.3d at 441 (discounting a physician's opinion where it lacked the support of laboratory findings).  Here, as the ALJ noted, Dr. Johnson offered little objective support for his findings, citing only "pain to palpation." (Tr. 421.)  As the ALJ observed, although Williams complained of knee pain, x-rays show incidental bipartitie patella but were otherwise normal. (Tr. 22.)  The ALJ also cited Williams's MRI findings, concluding that they "did not show deficits that would preclude light work." (Tr. 24.)  "An ALJ may discount a treating source's opinion as long as the ALJ provides a reasoned explanation for that decision." *Brummet v. Barnhart*, No. 1:05-cv-581, 2006 WL 3248452, at *12 (S.D. Ind. June 13,

2006) (citing *Skarbek*, 390 F.3d at 503).

Nonetheless, Williams raises several specific challenges to the ALJ's treatment of Dr. Johnson's opinion.  He first argues that the ALJ failed to specifically identify what "other evidence of record" makes Dr. Johnson's opinion on Williams's expected absenteeism and limitation to part-time work "less persuasive."  But "tidy packaging" is not required for an ALJ's decision, as courts read them "as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (unpublished) (collecting cases).  In addition to the lack of objective findings described above, the ALJ observed that Dr. Stevenson, the consultative examiner, penned that Williams had no limitations in sitting or walking and that Drs. Sands and Brill found his physical limitations non-severe. (Tr. 22-23.)  And from a psychological perspective, the ALJ noted that Dr. Johnson's opinion conflicted with the opinions of Drs. Martin, Hill, and Gange indicating that Williams could perform repetitive work on a sustained basis. (Tr. 23-24.)

Next, Williams contends that the ALJ should have assigned Dr. Johnson's opinion greater weight because he was the only medical source that considered his impairments "in combination." (Opening Br. 12.)  As Williams sees it, "[t]his is not a case where there are conflicting medical viewpoints and the ALJ simply must choose one view over the other, but instead it is a medical opinion that is uncontradicted in the record as none of the other psychologists or doctors considered [his] mental and physical impairments in combination to determine his limitations." (Opening Br. 12.)  But Williams's argument overreaches, as Drs. Martin, Hill, and Stevenson all recognized that Williams had both physical and psychological impairments. (*See* Tr. 251-55 (concluding that Williams's physical problems were the primary

18

source of his work impairments, but that he also had difficulty with anger management), 278

(same), 256-59 (reviewing Williams's psychological history during his physical examination).)

Linked to this argument, Williams criticizes the ALJ for considering that Dr. Johnson

was a family practitioner, not a specialist in mental health.  Williams emphasizes that "family

doctors do have training in psychiatry, and they prescribe medicines for psychiatric illnesses."

(Opening Br. 13.)  Be that as it may, this argument "amounts to nothing more than a dislike of

the ALJ's phraseology," *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), as the regulations

instruct an ALJ to consider a doctor's specialty when weighing that opinion, 20 C.F.R. §§

404.1527(c)(5), 416.927(5) ("We generally give more weight to the opinion of a specialist about

medical issues related to his or her area of specialty than to the opinion of a source who is not a

specialist."); *see White v. Barnhart*, 415 F.3d 654, 658-59 (7th Cir. 2005) (articulating that a

doctor's specialty is a key factor when weighing a medical opinion).

Finally, Williams alleges that the ALJ erred by considering Dr. Johnson's statement that

he had a "good response to pain medication." (Tr. 23.)  But again Williams's objection is of no

moment, as the ALJ perceived an internal inconsistency between the severe limitations that Dr.

Johnson assigned and his comment that Williams was responding well to the pain medication.

The regulations permit an ALJ to consider the consistency of a physician's opinion when

weighing that opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more

consistent an opinion is with the record as a whole, the more weight we will give that opinion.");

*see Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if

it is internally inconsistent or inconsistent with other evidence.").  Moreover, the ALJ also

expressly considered Dr. Johnson's comment that Williams experienced drowsiness when taking

the maximum dosage of medication, and thus the ALJ reviewed the evidence fairly.  He then

accommodated this reported side effect by including hazard precautions in Williams's RFC. (Tr.

22 ("Finally, hazard precautions are included [in the RFC] due to the alleged side effects of

medications."); *cf. Kazmi v. Astrue*, No. 11 C 6123, 2012 WL 5200083, at *13 (N.D. Ill. Oct. 22,

2012) (remanding the ALJ's decision where he failed to consider the evidence regarding the side

effects of the claimant's medication when assessing the severity of claimant's complaints).

     In sum, the ALJ sufficiently evaluated Dr. Johnson's opinion and adequately explained

his rationale for assigning it the weight that he did, allowing this Court to adequately trace his

path of reasoning with respect to the assignment of Williams's RFC. *See Books*, 91 F.3d at 980.

The Court will not accept Williams's invitation to merely substitute our judgment for the

Commissioner at this juncture. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000)

(emphasizing that the Court is not allowed to substitute its judgment for the ALJ by "reweighing

evidence" or "resolving conflicts in evidence").  Consequently, his second argument does not

merit a remand of the Commissioner's final decision.

### E.  The ALJ's Credibility Determination Will Not Be Disturbed

     Finally, Williams challenges the ALJ's credibility determination, contending that the ALJ

(1) did not sufficiently credit his testimony about his significant difficulty getting along with

others and his sleep problems, and (2) failed to consider the combined effects of his mental and

physical conditions on his ability to work.  The ALJ's credibility determination, however, is

amply supported.

     Because the ALJ is in the best position to evaluate the credibility of a witness, his

determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.

2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Contrary to Williams's assertion, the ALJ thoroughly considered the evidence of record pertaining to his psychological problems when assessing the credibility of his complaints.  To reiterate, the Court reads an ALJ's decision "as a whole and with common sense." *Buckhanon*, 368 F. App'x at 678-79.  When assessing the severity of Williams's symptoms, the ALJ expressly considered his assertion that his mood disorder makes it "hard for him to be around others." (Tr. 21.)  In doing so, the ALJ considered Dr. Martin's evaluation, which recommended merely that Williams find employment in an environment with little social interaction. (Tr. 23.) A claimant's "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007); *Smith*, 231 F.3d at 439 ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p.

The ALJ also observed that Williams had not attended any mental health counseling and that his mental health treatment had consisted simply of antidepressant medication prescribed by

his family physician. (Tr. 23.)  An ALJ is instructed to consider the type of treatment that a

claimant has undergone when determining that claimant's credibility. 20 C.F.R. §§

404.929(c)(3), 416.929(c)(3) (considering a claimant's use of medications and treatment

measures as two factors in analyzing claimant's subjective symptoms); SSR 96-7p; *see Simila v.

Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (emphasizing that the regulations expressly permit the

ALJ to consider a claimant's treatment history when evaluating his credibility).  In addition, the

ALJ assessed Williams's activities of daily living, concluding that he had just mild limitations in

this area in that he drives a car, performs household chores, frequently plays video games, visits

with a friend online, and watches the children. (Tr. 20); *see Schmidt*, 395 F.3d at 746-47

(considering claimant's performance of daily activities as a factor when discounting claimant's

credibility); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

Moreover, the ALJ did indeed credit Williams's mental health symptom testimony to a

significant extent, acknowledging that his social functioning problems cause him moderate

difficulties.  Accordingly, to accommodate these deficits, the ALJ assigned an RFC that limited

Williams to "no more than superficial interaction with the general public, coworkers or

supervisors." (Tr. 21.)  And as to his sleep complaints, as explained earlier, the ALJ included a

hazards precaution in the RFC due to Williams's complaint of drowsiness. *See, e.g.,Vincent v.

Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming the ALJ's

credibility determination where he discredited the claimant's symptom testimony only in part).

Not to be deterred, Williams also argues that the ALJ failed to consider the combined

effect of his psychological and physical impairments when assessing his credibility.  But at the

outset of his decision, the ALJ expressly emphasized that he would consider all of Williams's

22

impairments, both severe and non-severe, when determining his RFC and whether he met a listing. (Tr. 18.) Then, at the point in his decision when he actually assigned Williams the RFC, the ALJ specifically stated: "In making this finding, I considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (Tr. 21 (emphasis added).) Similarly, at step three, the ALJ articulated that Williams did "not have an impairment or combination of impairments" that met or equaled a listing. (Tr. 19.)

Even more pointedly, the ALJ acknowledged his duty to "make a finding on the credibility of the statements based on a consideration of the *entire* case record." (Tr. 21 (emphasis added).) Similarly, the ALJ acknowledged at two other points in the decision his "careful consideration of the *entire* record." (Tr. 19, 21 (emphasis added).) Consequently, Williams's assertion that the ALJ failed to consider all of his impairments in combination is expressly defied by the record. *See Nelson v. Bowen*, 855 F.2d 503, 508 (7th Cir. 1988) (articulating that where the ALJ explicitly concluded that the claimant had no "impairments, which *singly or combined* preclude claimant from engaging in substantial gainful activity," the ALJ "apparently *did* consider the combined effects of [he claimant's] impairments" (emphasis in original)); *Corey v. Barnhart*, IP 01-0320-C-T/F, 2002 WL 663130, at *4 (S.D. Ind. Mar. 14, 2002) (explaining that use of the words "'combination of impairments' . . . or similar words would clearly reflect that the ALJ considered [the claimant's] impairments in combination"). In fact, it is quite obvious that the ALJ did not ignore any of Williams's mental or physical problems, as he penned with particularity no less than four pages about Williams's various physical and psychological impairments.

23

In sum, the arguments advanced by Williams challenging the ALJ's credibility determination are of little moment.  Accordingly, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Williams.

SO ORDERED.

Enter for this 22nd day of January, 2013.

S/Roger B. Cosbey_____
Roger B. Cosbey,
United States Magistrate Judge

24